IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Norma J. Kirkland, | ) | C/A No. 3:10-1851-MBS-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| The Columbia College, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff, Norma J. Kirkland, a professor, filed this employment case against her former employer, Columbia College, a private university, asserting claims for violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq., as well as state claims based on breach of contract. This matter is before the court on Columbia College's motion for summary judgment (ECF No. 35; see also additional attachments, ECF No. 36) and motion to strike two affidavits submitted by Kirkland (ECF No. 46). Also pending before the court is Columbia College's motion to consolidate this matter for trial with Civil Action 3:10-1852-MBS-PJG. (ECF No. 33.) Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion for summary judgment should be granted.

**BACKGROUND**

The following facts are either undisputed or are taken in the light most favorable to Kirkland, to the extent they are supported by the record. Kirkland, who is over the age of forty, is a professor of music. Columbia College hired Kirkland in 1999 and awarded her tenure in 2002. In the fall of 2008, a downturn in the national economy caused the College to anticipate a potential $2,000,000 shortfall in its budget. It underwent a "re-visioning" process during which a committee comprised of faculty members made recommendations to the College's president, Dr. Caroline Whitson,

regarding the efficiency of academic programs and restructuring. The committee ultimately recommended the elimination of the Music Education degree program, among others. Dr. Whitson adopted this recommendation, which was ultimately approved by the College's Board of Trustees. As a result, at least two professors in the music department who were over the age of forty, including Kirkland and Dr. Ann Benson, were given "terminal contracts," giving them one year's notice of termination.

Shortly after Kirkland was informed that she was receiving a terminal contract due to the elimination of her position, Kirkland was offered another position at the College as the choral director. This position included such duties as operating a voice studio, directing the choir, taking the choir on tour, and teaching applied voice. The choral director position had first been offered to Benson, who like Kirkland had received notice of termination, but Benson declined. After considering the offer, Kirkland likewise turned it down. Although her stated reasons for rejecting the position have varied somewhat, in the instant litigation Kirkland contends that she turned down the choral director position because her own education and experience in the music education field did not suit her for the duties of that job. Dr. Rebecca Johnston, who was in her thirties, was ultimately hired for the choral director position.

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.    ADEA Claim**

Kirkland's federal claim rests on her contention that she was terminated in violation of the ADEA. The United States Supreme Court has held that to prevail on an ADEA claim, a plaintiff must show that age was the "but for" cause of the adverse action of the employer. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 129 S. Ct. 2343, 2350 (2009) ("To establish a disparate-treatment claim

under the plain language of the ADEA . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."). Columbia College is entitled to summary judgment on this claim because on the record presented no reasonable jury could find that Kirkland was terminated because of her age.[1] See id. (quoting ADEA's provision making it unlawful for an employer to engage in certain employment practices "*because of* such individual's age").

While Kirkland argues that Columbia College never publicly or formally announced[2] that it was experiencing financial difficulties when it decided to eliminate her position, she concedes that it was in fact facing a significant budget shortfall. (Kirkland Dep. 154:3-19, ECF No. 35-2 at 36.) Moreover, the record is undisputed that Columbia College retained at least two faculty members above the age of fifty in the newly restructured music department. Further, the undisputed decision-maker in this case, President Whitson, is older than Kirkland. See Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1471 (11th Cir. 1991) (ADEA) (stating that it is difficult for a plaintiff to establish

---

[1] Although both parties' memoranda contain lengthy analyses of the proof scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which is often used in employment cases, the United States Supreme Court has expressly not addressed whether this framework is properly applied in the context of the ADEA as opposed to Title VII. See Gross, 129 S. Ct. at 2349 ("This court has never held that this burden-shifting framework applies to ADEA claims. And, we decline to do so now."); see also id. at 2349 n.2. While the United States Court of Appeals for the Fourth Circuit has continued to apply it in ADEA cases post-Gross, the court finds it unnecessary in this particular case to engage in the "intricacies of proof schemes," Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010); the only real issue here is causation, and the Supreme Court has provided a clear standard on that point.

[2] Kirkland appears to base this argument on a policy of the American Association of University Professors ("AAUP"), which contains a definition of "financial exigency" that she contends was not met in this case. (See Whitson Dep. Ex. 16, ECF No. 43-2 at 11 (containing AAUP's definition of "financial exigency")). However, although she asserts that the College led the faculty to believe that AAUP policies would be followed, see infra at 8, she has presented no evidence to refute the College's showing that the particular AAUP provision on which she relies for this argument was never adopted by Columbia College. Kirkland concedes that in the academic field an AAUP policy is not binding unless a college adopts it. (See Kirkland Dep. at 113:15-22, ECF No. 47-3 at 2.)

discrimination when the allegedly discriminatory decision-makers are within the same protected class as the plaintiff); but see Kadas v. MCI Systemhouse Corp., 255 F.3d 359 (7th Cir. 2001) (declining to follow in the age discrimination context case law applying the inference of nondiscrimination based on the fact that the decision-maker is in the same protected class as the plaintiff).  Finally, although Kirkland takes issue with certain decisions made by Columbia College during the re-visioning process, such as electing to expend funds on moving faculty offices, raising the salary of one faculty member,[3] and retaining younger teachers in other disciplines, she has presented no probative evidence that Columbia College did not treat age neutrally in making its decisions when reducing its workforce.  See Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998) (discussing how a plaintiff may create an inference of discrimination in a reduction-in-force case); Williams v. General Motors Corp., 656 F.2d 120, 129 (5th Cir. 1981) ("The ADEA mandates that an employer reach employment decisions without regard to age, but it does not place an affirmative duty on an employer to accord special treatment to members of the protected age group."); see also Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000) (" '[I]t is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.' ") (quoting DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998)); Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir. 1995) (noting that an employer is not required to terminate younger employees to retain older ones); Smith v. Univ. of N. Carolina, 632 F.2d 316, 345 n.26 (4th Cir. 1980) ("Of all fields, which the federal courts should hesitate to invade and take over, education and faculty appointments at a University level are probably the least

---

[3] The College disputes that a faculty member received a raise during the relevant time period, and Kirkland does not appear to have presented any evidence that the salary increase at issue occurred after 2008.

suited for federal court supervision.") (quoting Faro v. New York Univ., 502 F.2d 1229, 1231-32 (2d Cir. 1974)).

Kirkland's proof in support of her age discrimination claim rests largely on the fact that the College hired a professor in her thirties for the choral director position. This evidence is not probative of age discrimination for several reasons. First, Kirkland ignores the undisputed facts that the choral director position was first offered to two existing faculty members in their fifties—including Kirkland herself—and that both of them rejected it before the College considered Dr. Johnston for the position. See Blistein v. St. John's College, 74 F.3d 1459, 1470 (4th Cir. 1996) (finding that the hiring of a younger employee had no probative force on the issue whether the college had engaged in age discrimination because the plaintiff had the opportunity to accept that position but rejected it), overruled in part on other grounds by Oubre v. Entergy Operations, Inc., 522 U.S. 422, 427-28 (1998).

Moreover, Kirkland's argument conflates the elimination of her position in the music department with the hiring of the new choral director. Again, this ignores the unrefuted evidence that Dr. Johnston did not *replace* Kirkland. She was hired for a different position that Kirkland declined after Kirkland's position was eliminated. Moreover, as noted above, in the face of the evidence in the record that Columbia College first offered the position to two faculty members in their fifties before extending the offer to a professor in her thirties, no reasonable jury could find that Columbia College did not treat age neutrally when making its decisions while reducing its workforce. See Causey, 162 F.3d at 802. Because the record does not contain evidence from which a reasonable jury could find that Kirkland is no longer employed at Columbia College *because of her age*, see Gross, 129 S. Ct. at 2350, her ADEA claim fails.

PJG

C.  **State Law Contract Claims**

With regard to her state law claims, Kirkland first asserts that the Faculty Manual created a binding contract which the College did not follow in terminating her. To prevail on this claim, Kirkland must show: (1) that the handbook provisions and procedures at issue apply to the employee; (2) that the handbook sets out procedures binding on the employer; and (3) that the handbook does not contain a conspicuous and appropriate disclaimer. Grant v. Mt. Vernon Mills, Inc., 634 S.E.2d 15, 20 (S.C. Ct. App. 2006). Here, the Faculty Manual on which Kirkland relies contains a capitalized disclaimer in bold font stating: "**THIS HANDBOOK IS NOT A CONTRACT. . . . NOTHING IN THIS HANDBOOK OR IN ANY OF THE COLLEGE'S PERSONNEL POLICIES SHALL BE DEEMED TO CONSTITUTE A CONTRACT OF EMPLOYMENT**."[4] (Kirkland Dep. Ex. 36, ECF No. 35-2 at 82.) Moreover, Kirkland concedes that she read and understood this disclaimer. (Kirkland Dep. at 199:8-15, ECF No. 35-2 at 43.) Thus, she cannot prevail on this claim.

Moreover, even if the Faculty Manual created a contract, Kirkland cannot show that Columbia College violated it. Although Kirkland conclusorily argues that the College did not follow the procedures in the Faculty Manual for termination of a tenured faculty member, (see Pl.'s Mem. Opp'n Mot. Summ. J. at 14, ECF No. 43 at 14), the provision she appears to rely on is an AAUP policy that was not adopted by the College. The record indisputably shows that while Columbia College adopted AAUP procedures regarding termination of faculty *for cause*, it did not do so with

---

[4] While Columbia College concedes that the disclaimer in the Faculty Manual does not meet the requirements of S.C. Code Ann. § 41-1-110, which became effective in 2004, it correctly points out that satisfaction of the statutory requirements is not the only manner in which a disclaimer can be determined to be conspicuous. See M. Malissa Burnette et al., Labor and Employment Law for South Carolina Lawyers 6 (3d ed. 2007) (referring to § 41-1-110 as a "safe harbor statute"); see also Hessenthaler v. Tri-County Sister Help, Inc., 616 S.E.2d 694, 697 (S.C. 2005) ("This Court has held that a disclaimer appearing in bold, capitalized letters, in a prominent position, is conspicuous.").

regard to terminations due to financial exigency or revision in academic procedures. (Israel Dep. at 41:16-42:23, ECF No. 36 at 27-28; Israel Dep. Ex. 2 at 23, ECF No. 36 at 57; see Kirkland Dep. at 207:3-208:27, ECF No. 47-3 at 5-6.) Kirkland admits that termination for financial exigency is distinct from a for-cause discharge. (Kirkland Dep. at 207:10-19, ECF No. 47-3 at 5; see also Israel Dep. at 37:10-22; ECF No. 36 at 25.)

Finally, Kirkland contends that Columbia College breached an implied contract. This theory is largely the same as her handbook claim but rests on the assertion that the College "led the faculty to believe" that AAUP procedures would apply regarding the re-visioning process. As an initial matter, the defendants correctly point out that Kirkland failed to plead such a claim. In any event, however, Kirkland has presented no evidence of mutual assent that Columbia College would follow AAUP procedures with regard to termination for financial exigency when such procedures had never been adopted by the College. See Hackler v. Earl Weigard Real Estate, Inc., 368 S.E.2d 686, 687 (S.C. Ct. App. 1988) (quoting Stanley Smith & Sons, Inc. v. Limestone College, 322 S.E.2d 474, 477 (S.C. Ct. App 1984) (outlining the requirements for an implied contract under South Carolina law)).

### RECOMMENDATION

All of Kirkland's claims fail as a matter of law. The court therefore recommends that Columbia College's motion for summary judgment (ECF No. 35) be granted and all other pending motions (EC F Nos. 33 & 46) be terminated as moot.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 10, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).